My name is Alexis Dannemann from Perkins Coie on behalf of the appellant petitioner Maureen Ridley, also known as Maureen Chan, who's present in the courtroom today. The government and Ms. Ridley agree that the district court's legal analysis in this case was wrong. The government nonetheless asked this court to affirm on an alternative basis, that is, that Ms. Ridley isn't credible. But the district court never held a hearing in this case, let alone made any Ms. Ridley's credibility. And it isn't for this court, in the first instance, to make such a finding. At a minimum, Ms. Ridley is entitled to a hearing in this case. Ms. Dannemann, this is a very unfortunate set of events for Ms. Chan, or Ridley. Is it Ridley? Do you call her Chan? I guess I wanted you to address the fact that we shouldn't be focusing on post hoc self-serving declaration for someone to get relief in these circumstances. And here, I think you'll acknowledge that the relief would be extraordinary by vacating the criminal conviction. So give me your best arguments as to why we should allow that in this situation. Yes, certainly granting the right would be an But Ms. Ridley, and it's certainly true that Ms. Ridley cannot rely only on post hoc arguments to support her case. The Supreme Court made that clear recently in Lee. But here there is a significant amount of contemporaneous evidence about Ms. Ridley's, particularly as to the prejudice prong, about Ms. Ridley's personal circumstances. She had at the time for plea, and the relevant inquiry of course, is what her decision-making process was at the time deciding whether or not to take the plea, significant family ties to the United States. So that's one aspect. And this court in Quan and in Rodriguez-Vega relied on that. And the Supreme Court in Lee is showing prejudice. She also asked her attorney about the immigration consequences of her plea, which again, this court in both Rodriguez-Vega and Quan relied on is showing prejudice. It wasn't his advice actually, as a practical matter, may have been wrong legally, but he said there's no problem. So she's indicted in 1993 and why it took seven years before she entered a guilty plea. But then she went in and out of the United States repeatedly all the way up until 2012. So his advice was it's not a big deal. There's not going to be any problem. And the reality of it is, the facts are, it wasn't a problem, right? Well, if I could read from Ms. Ridley's declaration, Ms. Ridley asked her attorney what the immigration consequences of her plea were, and her attorney's response was simply that I had nothing to worry about, that I did not face any adverse immigration consequences. And that is not accurate advice. Well, it was accurate for 19 years. Yes, from 2000 until 2020. Yes, that was accurate until then, but it wasn't accurate. She did face immigration consequences from her plea. But she went back and forth, used a passport. How many times did she leave the country and come back? That's true. I'm not sure of the exact number, but it was multiple times that she left the country. And I think that only highlights the fact that Ms. Ridley was okay for her to travel in and out of the country because she wasn't facing any adverse immigration consequences. And as the record reflects, that's not true. She's currently in removal proceedings. And she could have been prior to 2012, but she wasn't. And so you may have answered this, but I didn't catch it. Where are we held under similar circumstances that a declaration alone is enough to establish ineffective assistance of counsel? So in this court's decision in Rodriguez-Vega, Ms. Ridley, or in that case, the court relied on the petitioner's declaration. Certainly in that case, there was also a declaration from the petitioner's attorney that corroborated the statement. Here, unfortunately, we don't have that evidence because her attorney is deceased. But I would submit that there is corroborating evidence in the record that her attorney did, in fact, give her this incorrect advice. Specifically, again, she traveled in and out of the country for multiple years with no consequence. Where is the corroborating evidence in the record as to the declaration that this advice was given? I'm sorry, I didn't catch that. Oh, I would say, I think there are probably two sets of facts that corroborate Ms. Ridley's statement that she received this incorrect advice. One is that she traveled in and out of the country repeatedly after taking the risk. Her attorney told her correctly that she would be rendered inadmissible. Why would she have taken that risk so many times by leaving the country and entering the country? And the other is her personal circumstances. The plea agreement, as the government points out multiple times in its brief, says that she may be deported. Why, in light of Ms. Ridley's circumstances, she would have signed that without, you know, getting confirming advice from her attorney. I think that suggests that, you know, she did get this advice. But I would say that I think this exchange probably, you know, highlights one of the most critical points in this case, which is Ms. Ridley was never afforded an opportunity to kind of corroborate her claims at a hearing, a hearing that she was entitled to under the law. So I believe there's enough evidence in the record to grant the petition. But I would also say that there's a reason hearings are required in these cases and that Ms. Ridley should have had one. Why didn't you ask for a hearing when the government did? And then they, you didn't ask for a hearing and the judge said there could be supplemental briefing, but vacated the hearing. So if the hearing was important, why didn't you ask for one? While hearing is mandatory under the law in these circumstances, the government, as your honor points out, did request a hearing. And Ms. Ridley had no reason to doubt that she was going to receive one based on the fact that the government requested one and the court did put one on the hearing before, um, sua sponte, taking it off the calendar. So, and that's what you want now. Well, your honor, I would at a minimum like a hearing in this case. I also think that there is enough evidence in the record for this court to grant Ms. Ridley's petition and vacate her conviction. So your position on the Quorum Novus motion is resolved in the same matter as in a habeas, I believe, corpus petition under 2255. Is that correct? Right. Which allows for no hearing, um, where the records conclusively show that the prisoner is not entitled to relief. I guess here, didn't the district court have everything it needed, uh, to make the ineffective assistance of counsel determination? He had a declaration from really, what more did he need? And how would he hearing have have helped here? Or how would a hearing help here? Yes. No, your honor. And I think that's highlighted by the government government's briefing below, in which they said that if true, Miss Ridley's statements about her counsel's proficient to form about her counsel's performance would be deficient and that her claims for prejudice made a very strong case for prejudice. And then they asked for a hearing to answer your honor's question on remand. I think any hearing would necessarily include presentation by my client at which the court could, you know, assess her credibility. And then it would also allow, and this would be between her and her trial counsel, um, her to, uh, to produce any additional cooperating evidence that she has. What? Okay. Okay. Good morning, your honors. May it please the court. Wilson Park for the United States. Less than one year ago in Lee versus United States, the Supreme Court reaffirmed the long settled principle and I quote that surmounting Strickland's high bar is never an easy task. And the strong societal interest in finality has special force with respect to convictions based on guilty pleas. But haven't you admitted in your briefing that the court was wrong on the application of both prongs of Strickland? Your honor, um, the government has conceded, uh, that the district court followed erroneous lines of reasoning, um, on both the deficient performance prong of Strickland and the prejudice prong of Strickland. However, um, as this court knows, the, the circuit can affirm a district court's ultimate holding on any basis supported by the record. And the government would submit that there is a basis in this record to affirm, um, the district court's order dismissing, uh, Ms. Chan's, Ms. Ridley's quorum notice petition. Wouldn't it be better to send it back for a hearing that you asked for in the first place? Uh, the court, um, the government would submit that the, um, the fact that the government asked for that hearing, uh, is not dispositive on whether the district court abused its discretion, um, in dismissing Ms. Ridley's petition, um, without holding a hearing. But that wasn't the question. I don't believe Judge Mullen was asking. You had asked for it. Why wouldn't we give it to her now? Whether or not it was dispositive of that point you were making? Uh, yes, Your Honor. Um, well, I think what has happened? What has changed your mind on that? Part of it is that the lead decision came down from the Supreme Court after, uh, after the government submitted its opposition in that case. Um, and the lead court provided additional guidance on what types of evidence, um, is needed in order to support an ineffective assistance of counsel claim. Um, and that's what's going to be my question to you because I asked it of your opposing counsel. Have we held that a declaration just because it is written, um, post hoc and has self serving statements cannot be considered in an effective assistance of counsel claim? I don't know that, uh, the court has held that it cannot be considered. Um, but the court, um, has held that, um, a an ineffective assistance of counsel claims solely supported by a self serving or conclusory or post hoc assertions that that would not be enough. Um, and the in its brief, um, and the Lee court, of course, held that, um, courts should not rely solely on the post hoc assertions of a defendant. Um, but here, this case seems a little different than Lee and distinguishable because, um, Ms. Ridley does not have the benefit of obtaining a declaration from her counsel because he is unfortunately deceased and because the underlying conviction here occurred 18 years ago. Um, and I think it was in 2000. And yet, uh, Mr. Ridley was not put in removal proceedings where she could challenge. I'm not clear why, but was not put in removal proceedings where she could challenge that commission until 12 years after that conviction. And, um, it seems also, uh, the government has not been able to file a record of Ridley's plea colloquy. Um, there's been so much time that has elapsed and the circumstances are not Ms. Ridley's fault. Why should the court discount the declaration on its face without any sort of credibility inquiry? It seems like this is screaming for evidentiary hearing. Your Honor, the government agrees that it's an apart from a declaration from Ms. Ridley's now deceased trial counsel. Um, there are other types of evidence, um, that Ms. Ridley may have been able to obtain in order to support the petition. What was the 12 year delay? Or the, how come 18 years later we're doing this? I don't believe it's in the record, Your Honor, but, um, just from my understanding, uh, I believe there was a delay from the time of indictment, um, to the time that defendant was ultimately arrested on the indictment. Again, I don't remember the number offhand, but I believe it was six, seven years. Um, and then I, I frankly cannot speak to why immigration, um, sorry, no problem. Why, why immigration, um, didn't start removal proceedings earlier. Um, but there, there is other types of evidence that Ms. Ms. Ridley may have been able to obtain. Um, it doesn't seem to make any difference to Judge Klausner. Judge Klausner just said, look, here's the plea agreement. It says it might have immigration, uh, effects on you. So he just sort of closed out, um, everything else. Um, so why, why don't we all agree that Judge Klausner was wrong on that? And even the government does. So why don't we give Judge Klausner a chance to assess the credibility of, of Ms. Ridley? Maybe he'll want to, maybe you'll want to cross examine her as to whether she read the plea agreement and, uh, how could she continue to believe that, uh, there was no immigration effect when the plea agreement clearly said that. And just to speak to that, Your Honor, um, the, um, it's not, the government would submit that, that an evidentiary hearing is, is not actually necessary in this case. Um, the, in terms of, sorry, did you say you're, you're not submitting? I didn't hear what you said. If the court is inclined to, um, to, um, affirm the district court's dismissal, um, the government believes that the court can do so without, uh, remanding for an evidentiary hearing. Um, in the end, the, because the evidence that's been submitted, um, on the Quorum Novus petition is, is relatively straightforward. On one hand, you have a declaration, um, from Ms. Chan, I'm sorry, from Ms. Ridley, um, that is conclusory, self-serving and contains post hoc assertions. Why shouldn't she submit an affidavit that's self-serving? Should she submit an affidavit which is not self-serving and is an affidavit against her? The only kind of affidavit you want to consider? I mean, wouldn't, wouldn't it be ineffective assistance of counsel if the, if the affidavit were not self-serving to his client? It's true, Your Honor. Um, the problem is that that's the only... What else, what else can she do at this point? Um, I mean, she, she's a witness to all of this. I understand, but she may be the only one. She's probably in the best position at this point. Um, cause it seems like you're asking the court to look at Ridley's declaration and find that because it is post hoc and self-serving, it cannot serve as a basis to prove her claim of ineffective assistance. But it seems like that is asking us, uh, to make a credibility decision. And it seemed, again, uh, that that's something that the district court should do. Um, uh, because if you're telling us to look at what we have, we're having to make a credibility determination. Government wouldn't characterize it as a credibility determination. It's the same determination that the Supreme Court and Lee made, uh, when it analyzed the record that was before it. It, it viewed the evidence that, um, Lee had the, uh, the contemporaneous evidence, um, other contemporaneous evidence in this case. And here we have a declaration from Ms. Ridley, uh, which is self-serving and conclusory. Uh, and then on the other side, we have contemporaneous evidence, um, or the essentially the only contemporaneous evidence in this case, which is the plea agreement, which contained an accurate warning about the deportation consequences of Ms. Ridley's plea. Contemporary is probably not a very good word in this case because 1993 to 2012 doesn't seem contemporary to me. I apologize. I meant to say contemporaneous. I'm just being facetious. Uh, but, uh, in every jury case, there's always an instruction that talks about determining the credibility of witnesses. And it goes through a litany of seven or eight different things you can look at. How can you make a credibility determination on a piece of paper? This is what, two pages long, the declaration? The, well, we, well, the government submit that the court, uh, again, the government doesn't believe it's a credibility determination, but the court can look to the other evidence in the case, which is the plea agreement, which provided an accurate warning about the deportation consequences in this case. And the certification from Ms. Ridley that she read and understood the agreement, that she discussed it with her attorney, um, and that there were no other promises or inducements made to her, um, in order for her to enter her pleas and also a certification from the defense lawyer in this case, the trial counsel, that he had discussed every part of that agreement with Ms. Ridley. Um, and again, the, the, the, this, this case involves a crime of moral turpitude versus an aggravated felony. Um, so the deportation, um, uh, warning in the plea agreement was accurate. Um, this was not a case where removal was a certainty as with aggravated felonies. Um, but that doesn't relieve counsel of his obligation to give her correct information on the consequences of a guilty plea and her status in this country, does it? It does not. And that was made clear by the Rodriguez-Vega case. Um, however, it does, um, So then why are you arguing the plea agreement? I mean, if that's your best argument, isn't that undercut by Rodriguez? Well, because it, um, it's the only contemporaneous evidence in this case that we have. And it, uh, Would you say that this is a unique case? I would, I would say that it is a unique case. I don't know that I would characterize it as a case that warrants the extraordinary and, um, the extraordinary relief that Coram Nobis requires. Um, um, I don't believe it's a case that would overcome the presumption of reasonableness and striction, based on the evidence that has been submitted, uh, by Ms. Ridley. Thank you very much, Mr. Clark. Ms. Norton. Some time for rebuttal. Why can't we rely on the plea agreement as contemporaneous in time and being indicative of what your client understood? I believe that this court could rely on the plea agreement as contemporaneous evidence, but the advice that Ms. Ridley received was directly contrary to the plea agreement. Ms. Ridley spoke to her counsel and told her there will be no consequences from your conviction. So the fact that the plea agreement contains these, um, general warnings, um, I don't think contradicts, um, Ms. Ridley's statement at all. Well, as a prior effect could so find. Yes, Your Honor. Um, and I'd, I'd also like to address, um, the government's standard in this case. Of course, Strickland applies a presumption of reasonableness when looking at counsel's action actions, but it doesn't apply, um, to allow the court to make a judgment about whether or not the action happened. It's about whether the action that happened was reasonable. Um, so of course we have the burden in this case, but I don't believe that Strickland in any way applies a heightened burden. Um, the government makes much of Ms. Ridley's inconclusory, but this wasn't its position below, and it can't be the case. This case, as Judge Bybee said in his concurrence in the prior opinion, is on all fours with Kwan. There are facts about the deficient performance, um, that are very similar to the court's decision in Kwan that counsel affirmatively misled, um, Ms. Ridley. And the two elements of prejudice in Kwan for the trial were the same. She spoke to her lawyer and, um, and she has strong family ties. Can I ask one more question? How much of the record is available from the point of the indictment? I mean, is there transcripts available? Is the record itself available for examination? Is it in storage someplace? Has it been disposed of? I'm not aware of there being any record, and I think the government's position below was that there there was nothing, nothing else. Um, and I suppose you don't know the answer to that. Why did it take five years to arrive at a plea agreement in a case where she ended up getting a two month sentence? I don't know the answer, Your Honor. I probably have some assumptions about that, but I think that just reflects that this is a unique case and, um, you know, could possibly be flushed out in evidentiary hearing. Thank you very much. All right. The case of you measures for America versus Marina Lane Champ, also known as Marine Ridley, is submitted.
judges: Bea, Murguia, Molloy